IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BOBI SUGG, | CV 24-70-GF-KLD |
| Plaintiff, | |
| vs. | ORDER |
| VALLEY COUNTY and JOHN DOES 1-10, | |
| Defendants. | |

On August 7, 2025, the Court issued an order (Doc. 20) dismissing Defendants Boyer, Shawver, the Valley County Sheriff's Office and the Valley County Detention Center, converting Plaintiff Bobbi Sugg's motion to dismiss to a motion for summary judgment, and requiring supplemental briefing on whether Sugg's claims against Valley County are barred by the statute of limitations and whether the Montana notice of claim statute, § 27-2-209(3), applied to Sugg's 42 U.S.C. § 1983 claim against Valley County. Those issues are now fully briefed and the Court is prepared to rule.

## I.     Background[1]

On March 29, 2023, Sugg was scheduled to provide medical treatment to Valley County inmate Jonathan Hamilton. Hamilton took Sugg hostage during that medical appointment, forced her into a nearby vehicle, and directed her to drive. Sugg was able to escape from the car, and ultimately the incident ended when Hamilton was shot and killed by a Valley County sheriff's deputy.

Sugg was interviewed by an agent of the Montana Department of Justice—Division of Criminal Investigation ("DCI") and later requested a copy of her interview. She was informed by the Valley County Attorney that she needed a court order to obtain such information. On August 8, 2023, Sugg's attorney sent a lengthy letter addressed to Valley County Sheriff Tom Boyer, seeking to resolve Sugg's claims resulting from the incident with Hamilton. The letter provided a detailed recounting of the facts surrounding the incident, an analysis of Sugg's damages and an analysis of her legal claims, including negligence and § 1983 claims against the County and the Sheriff's office. The letter contained a formal offer for a specific sum to settle all of Sugg's claims against the Sheriff's Office and the deputy who was supervising Hamilton during the medical appointment in which Sugg was taken hostage. The offer to settle was time-limited to August 31,

---

[1] The facts are more specifically stated in Doc. 20, and the Court provides this factual summary simply for context.

2023, after which "we will file suit against the Sheriff's Office (and Officer Shawver) and seek all available damages under Montana law." (Doc. 11-1 at 20).

After that deadline had expired, with no response from the County, Sugg sought Confidential Criminal Justice Information (CCJI) from the Montana Department of Criminal Justice-Division of Criminal Investigation ("DCI"), the Valley County Attorney's Office, the Valley County Sheriff's Office, the Valley County Detention Facility and the Phillips County Sheriff's Office. In the meantime, and before the Court granted Sugg's motion for the CCJI, Valley County Attorney Dylan Jensen notified Sugg's attorney that his August 8, 2023 letter had been forwarded to the clerk or secretary of Valley County, pursuant to Montana Code Annotated § 2-9-301. He further stated that the Valley County Commissioners had considered the claim but declined it on September 13, 2023. He advised that the matter had been forwarded to the County's insurance provider. The letter from Jensen to Sugg's attorney was dated October 10, 2023.

The Court granted Sugg's motion to receive the CCJI on December 1, 2023. While the DCI and the Phillips County Sheriff's Office apparently complied with the order promptly, Sugg was required to file a motion with the Court to require the Valley County entities to comply with the order. Ultimately, on March 11, 2024, the Valley County attorney provided 400 pages of new documents and a recorded interview between Sheriff Boyer and Deputy Shawver that had not previously been

produced. Sugg filed this lawsuit approximately five months later on August 16, 2024.

## II.   Discussion

The two issues the Court must decide are whether Sugg's claims against Valley County are precluded by the six month statute of limitations found in Montana Code Annotated § 27-2-209(3), which states "Actions for claims against a county that have been rejected by the county commissioners must be commenced within 6 months after the first rejection" and whether this limitation applies at all to claims brought under 42 U.S.C. § 1983. For the reasons set forth below, the Court determines that Sugg's negligence claim is precluded by § 27-2-209(3) but that statute does not apply to her § 1983 claims, which are subject to the general tort statute of limitations and thus timely brought.

### A. Negligence claim

Analysis of whether Sugg's negligence claim is precluded by § 27-2-209(3) requires an understanding of how the claim was presented to the County. Montana Code Annotated § 2-9-301(3) states that "[a]ll claims against a political subdivision arising under the provisions of parts 1 through 3 shall be presented to and filed with the clerk or secretary of the political subdivision." Sugg's letter did not reference this statute, but was nonetheless presented to the County as a formal claim against it (albeit naming an inanimate building and a department of the

4

County instead of the real party in interest). (Doc. 20 at 18-20). It is undisputed that the actions and omissions alleged in the letter are the same as alleged in the lawsuit, including the identity of the individuals whom Sugg alleges to have acted wrongfully. In his response, Valley County Attorney Jensen referred to § 2-9-301 and stated that the Comissioners had declined the claim.

Sugg argues that because she did not present the demand letter to the secretary or clerk of the political subdivision (the County), § 2-9-301 does not apply. From that contention, she argues that the six month time period for bringing a claim found in § 27-2-209(3) has not only not expired, it has not begun to run to this date. (Doc. 23 at 7). The County points out that § 27-2-209(3) is silent as to how the claim comes before it, and instead contains triggering language relying on the denial of the claim. In other words, for the purpose of the statute of limitation beginning to run, the triggering event is when the County denies the claim, regardless of how the claim came to it.

When interpreting Montana statutes, the court applies Montana's rules of statutory construction. *Marten v. Haire*, 329 F.R.D. 256, 261 (D. Mont. 2018). Montana Code Annotated § 1-2-101 states role of the court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted . . .." It must additionally "give effect to all" when there are statutes which arguably overlap. *Marten*, 329 F.R.D. at

261, citing § 1-2-101. While § 2-9-301(3) does direct a claimant to provide a claim against a political subdivision to the clerk or secretary, that specific notification process is not similarly included in § 27-2-209(3), which simply provides a statute of limitations after claims against a county have been rejected by the county commissioners. If the legislature had wanted to nullify the commissioners' ability to review and accept or deny claims based on the notification procession, it could have done so by inserting that language into § 27-2-209(3) and making compliance with § 2-9-301(3) a condition precedent to such consideration. It did not, and the court will not insert what has been omitted.

It is undisputed that Sugg did not file her lawsuit within six months of the October 10, 2023 letter denying her claim. The question then becomes, what is the effect of missing that deadline? Under Montana law, Sugg's negligence claim is precluded. *Estate of Ostby v. Yellowstone County*, 2020 WL 4732054, at *3 (D. Mont. Aug. 14, 2020). Faced with this outcome, Sugg asks the court to equitably toll the statute of limitations to allow her negligence claim to go forward, although it was brought outside the applicable statute of limitations.

The policy behind the doctrine of equitable tolling is to allow good faith litigants their day in court. *Brilz v. Metro. Gen. Ins. Co.*, 285 P.3d 494, 499 (Mont. 2012). Courts apply the doctrine of equitable tolling to excuse strict compliance with categorical time bars "when the plaintiff is actually prevented from filing on

time despite exercising that level of diligence which could reasonably be expected in the circumstances." *Schoof v. Nesbit*, 316 P.3d 831, 840 (Mont. 2014) (citation omitted). Thus, "[e]quity ensures just results in exceptional circumstances." *BNSF Ry. Co. v. Cringle*, 281 P.3d 203, 208 (Mont. 2012) (J. Morris, specially concurring).

Under Montana's three-part test for equitable tolling, a statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. *Schoof*, 316 P.3d at 840 (quoting *Lozeau v. GEICO Indem. Co.*, 207 P.3d 316, 319 (Mont. 2009)). The party invoking equitable tolling must show "a reasonable and good faith pursuit of one of several possible remedies and then demonstrate the three criteria listed above have been satisfied." *Lozeau*, 207 P.3d at 319.

The Montana Supreme Court has rejected a one-size-fits-all approach to the doctrine of equitable tolling when such an approach would serve no policy purpose. *Weidow v. Uninsured Employers' Fund*, 246 P.3d 704, 709 (Mont. 2010). However, there is an important policy in "applying procedural bars regularly and

consistently." *Weidow*, 246 P.3d at 709 (citation omitted). Equitable tolling is appropriate when a defendant's conduct concealed the existence of a claim, regardless of whether that conduct was fraudulent or intentional. *Running Crane v. U.S.*, 634 F.Supp.3d 946, 953 (D. Mont. 2022) (citations omitted). However, equitable tolling is not appropriate in cases in which the litigant has failed to meet a deadline as a result of "garden variety" neglect. *Weidow*, 246 P.3d at 709; *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993).

Sugg argues that she pursued one of several possible remedies in her case, both before and after being advised that Valley County was denying her claim. She notes that she sent a lengthy and detailed settlement demand in August 2023, and after the claim was denied, spent months trying to get the CCJI from Valley County. This activity, she suggests, supports the conclusion that she was acting in good faith and that Valley County knew of her claims. She further argues that the Valley County Attorney was obliged to inform her of the existence of § 27-2-309(3) in his letter denying her claim if Valley County intended to raise it as a defense in this case.

It is not reasonably in dispute that Valley County knew of Sugg's claims: on August 8, 2023, she sent a 20-page demand letter outlining the facts of the case, her legal theories and her specific categories of damages. The real questions are whether she pursued other claims in good faith and whether there was anything

preventing her from filing her lawsuit on time, despite exercising due diligence. Sugg argues that she was misled by the Valley County Attorney's letter denying her claims because it did not advise her that she had not named the correct parties and it did not advise her that Valley County would rely on the statute of limitations in § 27-2-209(3). As Valley County notes, however, not only did Sugg's letter discuss claims against "the County" (Doc. 11-1 at 18), the denial letter made clear that the County was denying the claim. (Doc. 11-2). Additionally, when Sugg did file suit (prior to being advised of § 27-2-209(3)), she named multiple parties, some of whom were immune from suit for legal reasons, but also named Valley County itself, indicating she appreciated that she had claims against Valley County. The issue of whether the appropriate entities were named in the complaint does not affect in any way the timing of when she filed suit.

While Sugg takes issue with the fact that the Valley County Attorney also did not advise her attorney of the applicable statute of limitations, there is no obligation for a party to advise an adverse party of the legal landscape, especially when that party is represented by an attorney. Finally, although Sugg describes the difficulty she had in getting CCJI from Valley County, the information she sought did not prevent her from fully comprehending the nature of her claims and damages, as evidenced by her detailed August 2023 demand letter. Sugg simply

missed the applicable statute of limitations, and for these reasons, her negligence claim is precluded.

**B.      § 1983 claims**

Valley County argues Sugg's § 1983 claims are similarly prohibited by the application of Mont. Code Ann. § 27-2-209(3) because § 1983 claims are subject to the forum state's statute of limitations. Valley County argues that because § 27-2-209(3) applies to all claims against counties which have administratively denied claims, it is a "tolling and general limitations statute," not a "notice of claim statute" and so applies as the general personal injury statute for a § 1983 claim against the county. Valley County also notes that, unlike a claim against the State, which requires the filing of a claim before a lawsuit may be filed, § 2-9-301(3) simply requires a claim to be filed with a political subdivision at some point. *Estate of Woody v. Big Horn County*, 376 P.3d 127, 131 (Mont. 2016). Accordingly, Valley County argues that the permissive nature of the claim filing procedure against a political subdivision takes the analysis out of the well-established prohibition of application of notice of claim procedures found in *Felder v. Casey*, 487 U.S. 131 (1988). From there, it posits that because Sugg voluntarily subjected herself to § 27-2-209(3) by filing a claim with Valley County, she chose to avail herself of the shorter statute of limitations applicable to counties found in § 27-2-209(3).

It is undisputed that § 27-2-209(3) contains a statute of limitations applicable only to claims which were administratively presented to a county and then denied. While in certain circumstances, a county's inaction may work to toll the general tort statute of limitations, *see e.g. Estate of Woody*, 376 P.3d at 131-32, that is not the situation present in this case. Here, Sugg undisputedly filed her lawsuit within three years of the facts giving rise to her claims and as such the issue of the tolling of the general statute of limitations is not before the court. Instead, the Court must determine whether a statute of limitations, applicable only to counties and only when a claim has been administratively denied, can override an otherwise applicable general statute of limitations for a federal civil rights action.

The Ninth Circuit has noted that state notice of claim statutes, including any special statutes of limitations that come with them, do not apply to § 1983 claims. *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999). The "general rule" followed in the Ninth Circuit is that the Court should "apply the state's general residual statute of limitations *and* state rules which toll the running of that statute." *Silva*, 169 F.3d at 610 (emphasis in original). In *Felder*, the United States Supreme Court analyzed a mandatory notice of claim statute, and noted that the impact of the notice of claim requirement would burden a federal right in a way that was "not the natural or permissible consequence of an otherwise neutral, uniformly applicable state rule." *Felder*, 487 U.S. at 144. Acknowledging that the statute was silent as to whether it

11

applied to state and federal law, the *Felder* court observed that the protection of the notice of claim statute applied only to governmental entities, which were in fact "the very persons and entities Congress intended to subject to liability." *Felder*, 487 U.S. at 144-45. The court found that the notice of claim statute discriminated against a federal right because only people who wished to bring claims against governmental defendants were subject to the abbreviated notice period. *Felder*, 487 U.S. at 146.

Valley County argues that because the notice of claim statute, as to political subdivisions of the state, is not mandatory, *Felder* and *Silva* are inapposite and do not apply. Its theory is that because Sugg could have filed a federal lawsuit without complying with § 2-9-301(3), her decision to comply with the statute divests the protections of the general statute of limitations and subjects her to the shorter statute of limitations found in § 27-2-209(3). This position is inconsistent with the remedial objectives of federal civil rights law, and would in fact create different classes of civil rights litigants in Montana, depending on whether the person chose to file an administrative claim and depending on whether the governmental entity against whom the claim was filed was a county, a city, a school district, or some other political subdivision of the state. Such a disparity discriminates against the federal right to bring a civil rights action, and is not permissible under *Felder* and *Silva*. Accordingly, Sugg's § 1983 claim is not subject to the shorter statute of

12

limitations in § 27-2-209(3) and thus was timely brought under the generally applicable statute of limitations for personal injury claims.

## III.   Conclusion

For the reasons stated above,

**IT IS ORDERED** that Valley County's converted motion for summary judgment (Doc. 10) is GRANTED as to Sugg's negligence claim and DENIED as to Sugg's § 1983 claim. The Court will set a schedule for the preliminary pretrial conference by separate order.

DATED this 3rd day of March, 2026.


_____
Kathleen L. DeSoto
United States Magistrate Judge

13